IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2004 Session

## STEPHANIE THURMAN HARTMAN (WALLACE) v. DARYL O'BRIEN HARTMAN

### Appeal from the Circuit Court for Rhea County
No. 20662      James W. McKenzie, Judge

### FILED JUNE 15, 2004

### No. E2003-02380-COA-R3-CV

The divorce judgment approved a MDA which provided that the minor children would reside with their father in Rhea County while mother was working in Atlanta. When not working, mother had custody. Two years after the divorce, father petitioned for custody, alleging that at the time of the divorce it was contemplated that mother would return to Tennessee and share equal parenting time. Mother counter-claimed for custody. Father was awarded primary custody. The judgment is vacated and the case is remanded for a hearing on the comparative fitness of each parent.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Vacated; Case Remanded

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Lucy C. Wright, Chattanooga, Tennessee, for appellant, Stephanie Ann Thurman Hartman (Wallace).

Mechelle Story, Spring City, Tennessee, for appellee, Daryl O'Brien Hartman.

### OPINION

These parties were divorced on July 18, 2000. A Marriage Dissolution Agreement [MDA] was approved by the trial court and incorporated in the final judgment. As pertinent here, the MDA provides:

> The parties shall retain joint legal custody of the minor children: Grayson McKenna Hartman, born March 25, 1995, and McKensie Daryl Emerson Hartman, born January 25, 1998. The children shall reside with the father, Daryl O'Brien Hartman, while the mother is residing and working in Atlanta, Georgia. The children shall reside with the mother, Stephanie Ann Thurman Hartman, at all times when she is not working and at other times agreeable to the parties.

On June 26, 2002, Husband filed a petition to modify the custody provision of the divorce judgment, alleging only, as relevant here, that at the time the divorce was granted it was contemplated that the Respondent [Mother] would be returning to Tennessee to reside and at that time the parties would share equal parenting time. He sought custody of the children "full-time" and that his "house be designated as the child[ren's] primary residence."

Wife answered and counter-claimed, pointing out the deficiency in the petition respecting a change in circumstances since the rendition of the judgment, and alleged a substantial change in circumstances in that Father drinks excessively and is not steadily employed. She sought a modification of the custody provision to allow the children to live primarily with her in Atlanta.

An Order was entered on September 3, 2003, finding that at the time the final decree was entered it was contemplated that the Respondent [Wife] would be returning to Tennessee to reside[1] and at that time the minor children would reside with her, and that she has not returned to Tennessee. The court further found that the minor children have undergone a material change of circumstances in that it was not understood what length of time the Respondent would continue to reside in Georgia "at the time the final decree was entered." Further, that it is in the best interest of the children that the Petitioner [Father] be the primary residential parent and his home be the primary residence of the children.

## The Relevant Proof

Father's job required travel. On occasion he would be gone for six weeks, and his parents, who lived nearby, would take care of the children. He decided to change his employment in order to spend more time with the children. He testified:

> Q. Remember you couldn't list a single incident that has changed since July 2000?
> A. The only thing that has changed is me taking a big pay cut to come home to be with my children.
>     * * * * *
> Q. And you have changed employment at least 10 or 11 times?
> A. 15 or 20 I would say.
> Q. And you have worked in 10 different states?
> A. Probably.

Wife is remarried, and continues to be employed by Norfolk Southern Railroad. She works in Atlanta five days a week. She was so employed at the time of the divorce and the approval of the MDA. She testified that there was no time frame discussed with respect to when she would return to Rhea County. She spends two or three days each week with the children, and calls them on other days when they are usually at their paternal grandparents house.

---

[1] With no time constraints mentioned.

The proof reveals that the children are essentially being reared by their paternal grandparents. The paternal grandmother testified that her son usually brings the children to her nearby house about 4:30 am - when he has custody - and that they are reawakened and taken to school by their grandfather. The father admitted to drinking "five or six beers" each day, while denying that he had an addiction problem.

## The Issue

The dispositive issue is whether the trial court erred in finding a change in circumstances but failed to compare the current fitness of each parent with respect to primary custody. Appellate review is *de novo* on the record. Factual findings are presumed to be correct unless the evidence otherwise preponderates. *Nichols v. Nichols*, 792 S.W.2d 713 (Tenn. 1990).

## Analysis

It is evident that Father wholly failed to prove a change in circumstances. He admitted as much. The finding of the trial court of a change in circumstances is based essentially upon the testimony presented by Wife[2], and we do not take issue with this finding. Our concern is that because the custody provision of the MDA is so vague, further investigation of whether the custody arrangement should be re-evaluated is warranted. We agree with the Appellant that after finding the circumstances of the children and their custody had changed in a material way the trial court should have carefully compared the fitness of each parent. *See, Caudill v. Foley*, 21 S.W.3d 203, (Tenn. Ct. App. 1999); Tenn. Code Ann. § 36-6-106; *Rice v. Rice*, 983 S.W.2d 680 (Tenn. Ct. App. 1998).

The law is well established that when a decree awarding custody of children has been entered, that decree is *res judicata* and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody. *Long v. Long*, 488 S.W.2d 729 (Tenn. Ct. App. 1972). Once the trial court has made an initial determination with respect to custody, it cannot entertain a subsequent petition to modify custody absent a material change in circumstances such that the welfare of the child demands a redetermination. *See,* e.g., *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995).

A "material change in circumstances" justifying modification of a child custody order may include factors arising after the initial determination or changed conditions that could not be anticipated at the time of the original order. *See Blair v. Badenhope*, 940 S.W.2d 575, 576 (Tenn. Ct. App. 1996) citing *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993). If the trial court finds that there has been a material change in circumstances, it will then consider the petition to modify custody using a best interests standard. *Woolsey v. McPherson*, No. 02A01-9706-JV-00125, 1998 WL 760950, at *2 (Tenn. Ct. App. Nov. 2, 1998).

---

[2] But primary custody was awarded to Husband.

Because there is *a strong presumption* in favor of the existing custody arrangement, ***Taylor v. Taylor***, 849 S.W.2d 319, 332 (Tenn. 1993), the party seeking to change the existing custody arrangement has the burden of proof to show both that the child's circumstances have materially changed in a way that was not reasonably forseeable at the time of the original custody decision and that changing the existing custody arrangement will serve the child's best interests. ***Geiger v. Boyle***, No. 01A01-9809-CH-00467, 1999 WL 499733 at *3 (Tenn. Ct. App. July 16, 1999); citing ***Smith v. Haase***, 521 S.W.2d 49, 50 (Tenn. 1975); ***McDaniel v. McDaniel***, 743 S.W.2d 167, 169 (Tenn. Ct. App. 1987); ***Seessel v. Seessel***, 748 S.W.2d 422, 424 (Tenn. 1988); ***Hall v. Hall***, 01A01-9310-PB-00465, 1995 WL 316255, at *2 (Tenn. Ct. App. May 25, 1995).

Under this standard, the primary inquiry is whether there has been a material change in the child's circumstances. Although there is no concrete definition for what constitutes a material change of circumstances, this court has enumerated several factors that should be taken into consideration when determining whether such a change has occurred. In general, the change must occur after the entry of the order sought to be modified and the change cannot be one that was known or reasonably anticipated when the order was entered. ***Turner v. Turner***, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988); ***Dalton v. Dalton***, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993). In addition, the material change of circumstances must be a change in the child's circumstances, not the circumstances of either or both of the parents. ***McCain v. Grim***, No. 01A01-9711-CH-00634, 1999 WL 820216 at *2 (Tenn. Ct. App. Oct. 15, 1999). The change must affect the child's well-being in a material way. ***Dailey v. Dailey***, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981).

The party seeking a change in custody has the initial burden to show a material change of circumstances which affects the welfare of the child. ***Harris v. Harris***, 832 S.W.2d 352 (Tenn. Ct. App. 1992). The burden remains on the moving party to show that he or she is comparatively more fit than the party with custody under the challenged custody decree and to show that it would be in the child's best interests for the moving party to be the custodial parent. ***Gorski v. Ragains***, No. 01A01-9710-GS-00597, 1999 WL 511451 at *4 (Tenn. Ct. App. July 21, 1999) citing ***Nichols v. Nichols***, 792 S.W.2d 713, 715 (Tenn. 1990); ***Rust v. Rust***, 864 S.W.2d 52, 56 (Tenn. Ct. App. 1993).

In the case at Bar, the trial court simply found that is was not understood what length of time [Wife] would continue to reside in Georgia, and made no analysis of the comparative fitness of each parent. We therefore vacate the judgment and remand the case for a plenary comparative fitness analysis. Pending a final judgment on this issue, the original MDA will remain in effect.

Costs are assessed to the appellee, Daryl O'Brien Hartman.

_____
WILLIAM H. INMAN, SENIOR JUDGE